IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01219-MSK-CBS

CROSSFIT, INC., a Delaware corporation,
        Plaintiff,
v.

MURRELL A. JENKINS, an individual, and
DOES 1-10,
        Defendants.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on Plaintiff's ". . . Motion for Entry of Default

Judgment and Permanent Injunction."   Pursuant to the Order Referring Case dated May 22,

2013 (Doc. # 5) and the memorandum dated January 16, 2014 (Doc. # 22), this matter was

referred to the Magistrate Judge.   The court has reviewed the Motion and Memorandum of

Points and Authorities in Support (Docs. # 18 and # 19), the pleadings, the entire case file, the

hearing held on March 5, 2014 (*see* Courtroom Minutes/Minute Order (Doc. # 25)), the

declarations and exhibits, and the applicable law and is sufficiently advised in the premises.


I.      Statement of the Case

        Plaintiff CrossFit, Inc. ("CrossFit") is principally engaged in the business of fitness training

and consulting.   (*See* Complaint (Doc. # 1) at ¶ 5).   CrossFit owns protectable interests in

several registered United States trademarks and service marks comprised of the term

"CrossFit."   (*See id.;* Exhibits B, C to Declaration of Marshall S. Brenner (Docs. # 20-2, #

1

20-3)).   Defendant Murrell "Jake" A. Jenkins ("Jenkins") is an individual doing business as "CrossFit Nutrition."   (*See* Doc. # 1 at ¶ 6).   Jenkins owns and controls a website with the domain name www.crossfitnutrition.com, which offers vitamins, supplements, and nutrition products for sale.   (*See id.*).   Jenkins and Aaron Corporate Enterprises, Inc. ("Aaron Corp."), a Colorado corporation, are registered publishers for several product distributors for the links contained in the crossfitnutrition.com website.   (*See* Exhibits 5, 6, 7 to Declaration of You-Fong C. Amato (Docs. # 21-5, # 21-6, # 21-7)).

This case arises out of Jenkins's alleged infringement of the CrossFit marks, among other unlawful conduct.   CrossFit alleges that Jenkins utilizes the CrossFit marks to trade on the goodwill associated with the CrossFit name through the unauthorized website with the domain name www.crossfitnutrition.com.   CrossFit alleged four Counts for violations of the Lanham Act, including false designation of origin, trademark infringement, trademark dilution, and cyperpiracy under the Anticybersquatting Consumer Protection Act ("ACPA").   (*See* Doc. # 1 at 6-10 of 12).   For its ACPA claim, CrossFit seeks monetary relief of $100,000 in statutory damages $18,996.00 in attorney's fees, and $3784.09 in costs, for a total of $122,780.09. (*See* Doc. # 19).   CrossFit also seeks an order requiring the domain name registrar to transfer the www.crossfitnutrition.com domain to CrossFit, and a permanent injunction precluding Jenkins from using the CrossFit marks.   (*See id.*).

II.   Standard of Review

Judgment by default may enter against a party who fails to appear or otherwise defend. In order for default judgment to be entered by the court:

> . . . the party must apply to the court for a default judgment. A default judgment
> may be entered against a minor or incompetent person only if represented by a

2

general guardian, conservator, or other like fiduciary who has appeared. If the party against whom default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.   The court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment it needs to:

(A) conduct an accounting;

(B) determine the amount of damages;

(C) establish the truth of any allegation by evidence; or

(D) investigate any other matter.

Fed. R. Civ. P. 55(b).

"[I]n civil cases, where a party fails to respond, after notice the court is ordinarily justified in entering a judgment against the defaulting party." *Cablevision of Southern Connecticut, Limited Partnership, v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001).   "[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the sound judicial discretion of the court." *Id.*, 141 F. Supp. 2d at 282 (internal quotation marks and citation omitted).   "There must be a sufficient basis in the pleadings for the judgment entered." *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2012).

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Id.   See also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (In order to fulfill the court's obligation to ensure that damages are appropriately awarded, the court must do more than merely accept at face value the movant's statement of damages.) (citations omitted); *Patray v. Northwest Publishing, Inc.*, 931 F. Supp. 865, 869 (S.D. Ga. 1996) ("allegations of the complaint are to be accepted as true, except those relating to the

amount of damages") (citation omitted).

"Damages, which are neither susceptible of mathematical computation nor liquidated as of the default, usually must be established by the plaintiff in an evidentiary proceeding in which the defendant has the opportunity to contest the amount." *Cablevision of Southern Conn.*, 141 F. Supp. 2d at 282 (internal quotation marks and citation omitted).

> The outer bounds of recovery allowable are of course measured by the principle of proximate cause. The default judgment did not give [plaintiff] a blank check to recover from [defendant] any losses it had ever suffered from whatever source. It could only recover those damages arising from the acts and injuries pleaded and in this sense it was [plaintiff's] burden to show "proximate cause." On the other hand, there was no burden on [plaintiff] to show that any of [defendant's] acts caused the well-pleaded injuries, except as we have indicated that it had to for the purpose of establishing the extent of the injury caused [plaintiff], in dollars and cents.

*Id.* "[T]he court has considerable latitude in deciding whether to require plaintiff to produce evidence in support of the claims before entering such a judgment." *Id. See also Jones v. Winnepesaukee Realty*, 990 F.2d 1, 4 (1st Cir.1993) (trial judge, sitting without a jury, has considerable latitude in determining the amount of the damages); *Kleier Advertising, Inc. v. John Deery Motors, Inc.*, 834 F. Supp. 311, 314 (D. Iowa 1993) ("It is a proper exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the prevailing party is lawfully entitled to recover and then give judgment accordingly.").   Here, the court accepts the undisputed facts set forth in the Declarations and exhibits.   (*See* Docs. # 20 through #20-5, # 21 through # 21-9).


III.   Analysis

A.   Subject Matter Jurisdiction, Venue, and Personal Jurisdiction

The court has subject matter jurisdiction over CrossFit's claims pursuant to 28 U.S.C. §

1331 and 28 U.S.C. §§ 1338(a) and (b), as the claims arise under the trademark laws of the United States. Venue is proper in this court pursuant to 28 U.S.C. §§ 1391 and 1400.

After unsuccessful attempts to informally resolve this matter failed, CrossFit filed this action on May 8, 2013. (*See* Doc. # 1). On June 16, 2013, Jenkins was personally served with the summons and complaint in this action. (*See* "Proof of Service" (Doc. # 8)). Thus, Jenkins's responsive pleading was due on or before July 8, 2013. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). As of this date, Jenkins has not appeared, filed an Answer, or otherwise responded in this action. Upon CrossFit's motion the court entered default on August 1, 2013. (*See* Docs. # 12, # 13).

"[J]udgment by default should not be entered without a determination that the court has jurisdiction over the defendant." *Dennis Garber & Assocs. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997). "Plaintiff bears the burden of establishing personal jurisdiction, but where, as here, the issue is determined on the basis of the pleadings and affidavits, that burden may be met by a prima facie showing." *Sharpshooter Spectrum Venture, LLC v. Consentino*, No. 09-cv-0150-WDM-KLM, 2011 WL 3159094, at *2 (D. Colo. July 26, 2011) (citing *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011)). Because neither the Lanham Act, 15 U.S.C. § 1051 *et seq.*, nor the Anti–Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S. C. § 1125(d), provide for nationwide service of process, the court looks to the Colorado long-arm statute. *Toytrackerz LLC v. Koehler*, No. 08-2297-GLR, 2009 WL 1505705, at * 3 (D. Kan. May 28, 2009).

The well-pleaded allegations and record before the court indicate that Jenkins is a resident of Colorado. Colorado Secretary of State records reflect that Jenkins's company, Aaron Corporate Enterprises, Inc., was formed and is located in Colorado. (*See* Exhibit 3 to

Declaration of You-Fong C. Amato (Doc. # 21-3)).   As registered agent for the corporation, Jenkins provided his address in Monument, Colorado.   (*See id.*).   Jenkins is subject to personal jurisdiction in this court as a resident of Colorado.   Even if Jenkins were not a Colorado resident, the court would have personal jurisdiction over him based on his activities in this state.   Colorado's long arm statute provides that a defendant is subject to personal jurisdiction where he or she engages in the "transaction of any business within this state" or commits a "tortious act within this state."   Colo. Rev. Stat. § 13-1-124.   Jenkins has transacted business in Colorado by the incorporation of Aaron Corp.   Jenkins and Aaron Corp. are the registrants for www.crossfitnutrition.com.   (*See* Exhibit 2 to Declaration of You-Fong C. Amato (Doc. # 21-2)).   Jenkins has admitted to "owning" the website, offered it for sale to CrossFit, and threatened to auction the domain.   (*See* Declaration of Marshall S. Brenner (Doc. # 20) at ¶ 11);   Exhibit D to Declaration of Marshall S. Brenner (Doc. # 20-4)).   Aaron Corp. is listed as the "publisher" for the marketing affiliate program for the product companies whose products are listed at www.crossfitnutrition.com.   (*See* Exhibits 5-7 to Declaration of You-Fong C. Amato (Docs. # 21-5, # 21-6, # 21-7)).   Under Colorado's long arm statute, Jenkins is subject to personal jurisdiction in Colorado based on the transaction of business and the commission of a tort in Colorado.   *See Toytrackerz,* 2009 WL 1505705, at * 5 (holding that plaintiffs "made a prima facie showing that the alleged tortious actions of the Individual Defendants subject them to jurisdiction under the 'commission of a tortious act' provision of the Kansas long-arm statute. . . The allegedly tortious conduct includes common law trademark infringement . . .");   *Sys. Designs, Inc. v. New CustomWare Co.*, 248 F. Supp. 2d 1093, 1097 (D. Utah 2003) ("Trademark infringement is a tort.   In a tort case, . . . jurisdiction may attach if the defendant's conduct is aimed or has an effect in the forum state.").

6

B.      CrossFit's Count IV for Violation of ACPA

"Congress enacted the Anti–Cybersquatting Protection Act (ACPA), 15 U.S.C. § 1125(d), to address a new form of piracy on the Internet caused by acts of cybersquatting, which refers to the deliberate, bad-faith, and abusive registration of Internet domain names in violation of the rights of trademark owners."   *Utah Lighthouse Ministry v. Foundation for Apologetic Information and Research*, 527 F.3d 1045, 1057 (10th Cir. 2008) (internal quotation marks and citation omitted)   "The ACPA provides for liability if a person registers, traffics in, or uses a domain name that is identical or confusingly similar to a distinctive mark, with a bad faith intent to profit from that mark."   *Id.* (citing 15 U.S.C. § 1125(d)(1)(A)).   Here, the well-pleaded allegations and undisputed evidence support CrossFit's claim for violation of the ACPA.

1.      Registration, Trafficking in or Use of a Domain Name

The domain registry records confirm that Jenkins and Aaron Corp. are the registrants and points of contact for the www.crossfitnutrition.com domain.   (*See* Docs. # 21-1, # 21-2, # 21-3).   Jenkins registered the domain on April 21, 2008.   (*See* Doc. # 21-1).   Jenkins then used the domain name on his website.   (*See* Doc. # 21-4).   Through the crossfitnutrition.com website, Jenkins offers vitamins, supplements, and other products for sale.   (*See* Doc. # 21-4). The CrossFit marks are displayed prominently on the website, and the contact information listed on the website is "contactus@crossfitnutrition.com," which also contains the "CrossFit" name. (*See id.*).   The website also contains links to nutrition products offered by product manufacturers and/or distributors Native Remedies, LLC and Medifast, Inc.   (*See* Docs. # 21-5, # 21-7).   The links are part of an affiliate marketing program administered by Commission Junction, Inc., whereby third parties, called "publishers," promote products on their websites in

7

order to drive traffic to product companies' websites and generate sales.   (*See id.*; Doc # 21-6).

When a user clicks on a link, he/she is redirected to the product companies' web pages, where

the user can purchase the product.   (*See* Doc. # 21-6).   The third parties whose websites

redirect to the product companies are paid a portion of the sales generated in this manner.

(*See* Docs. # 21-5 to # 21-7).   Jenkins and Aaron Corp. are registered publishers with

Commission Junction for the links contained in the crossfitnutrition.com website.   (*See* Docs. #

21-3, 21-5 to # 21-7).   Jenkins and Aaron Corp. are publishers for several product distributors,

including Native Remedies, LLC and Medifast, Inc.   (*See* Docs. # 21-5 to # 21-7).

Jenkins's use of the CrossFit marks is unauthorized because neither he, Aaron Corp.,

nor his website is a licensed CrossFit affiliate or is entitled to make use of the CrossFit marks in

any manner.   (*See* Doc. # 20 at ¶ 10).   Since the filing of this suit, www.crossfitnutrition.com

has been suspended by Go Daddy, the site's Internet domain registrar and web hosting

company, but the domain is still registered to Jenkins.   (*See* Docs. # 21-2, # 21-8).

In or around August 2010, CrossFit became aware that Jenkins was offering the

www.crossfitnutrition.com domain for sale.   (*See* Doc. # 20-4).   On August 20, 2010, Jenkins

sent an e-mail to CrossFit, stating his intent to "auction" the domain at an opening bid of

$25,000.   (*See id.*).   Jenkins expressly invited CrossFit to purchase the domain.   (*See id.*)

On the same day, CrossFit responded and informed Jenkins of CrossFit's registration and

ownership of the CrossFit marks.   (*See id.*).   CrossFit demanded that Jenkins immediately

transfer the domain to CrossFit in exchange for CrossFit's promise not to file suit for trademark

infringement and other claims.   (*See id.*).   Jenkins refused to transfer the domain, again

stating that the domain name would go to auction if CrossFit did not make a reasonable

purchase offer.   (*See id.*)   Jenkins threatened to claim damages of $100,000 against CrossFit

should it pursue any cease and desist order against him.   (*See id.*).

On March 26, 2013, CrossFit again contacted Jenkins, reminding him of its rights in the CrossFit marks and demanding that he transfer the domain to CrossFit.   (*See* Doc. # 20-5). Having received no response, CrossFit contacted Jenkins again on March 27, 2013. (*See id.*). Jenkins responded and continued to refuse to transfer the domain without monetary payment. (*See id.*).   CrossFit rejected his invitation and reasserted its demand for the domain transfer. (*See id.*).   Jenkins did not further respond.   (*See id.*).   In sum, the undisputed facts demonstrate that Jenkins registered and used the domain name within the meaning of the ACPA.

2.      Identical or Confusingly Similar to Distinctive or Famous Mark

To prevail on its ACPA claim, CrossFit must show that its trademarks were distinctive at the time of registration of the domain name, that the crossfitnutrition.com domain name registered by Jenkins is identical or confusingly similar to the trademarks, and that Jenkins used or registered the domain name with a bad faith intent to profit.   *Utah Lighthouse*, 527 F.3d at 1057.

To determine if CrossFit's marks are distinctive or famous, the court may consider the following factors:

> (A) the degree of inherent or acquired distinctiveness of the mark; (B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used; (C) the duration and extent of advertising and publicity of the mark; (D) the geographical extent of the trading area in which the mark is used; (E) the channels of trade for the goods or services with which the mark is used; (F) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought; (G) the nature and extent of use of the same or similar marks by third parties.

15 U.S.C. § 1125(c)(1).   CrossFit's marks are distinctive and famous.   CrossFit spends substantial time, money, and effort to develop broad consumer recognition of its trademarks and services.   (*See* Doc. # 20 at ¶¶ 3-7).   CrossFit extensively markets its business through its website and social media.   (*See id.* at ¶ 4).   The CrossFit marks are highly recognizable to the public worldwide through said marketing, including events such as the CrossFit Games.   (*See id.*).   The CrossFit marks have been in continuous use and are the only ones of their kind due largely to CrossFit's protection of its intellectual property, through trademark and service mark registration.   (*See id.* at ¶¶ 3-6).   *See Southeastern Louisiana Entertainment, L.L.E. v. Hollywood Entertainment Corp.*, No. CIV.A.00-1026, 2000 WL 1251952, at * 3 (E.D. La. Sept. 1, 2000) ("a famous mark is one which has been developed extensively enough to have significant marketing value to the owner and to cause a recognizable association to the public").   The well-pleaded allegations and evidence before the court support a finding that the CrossFit marks are famous and distinctive.

The second element of the ACPA claim is satisfied, as the domain name www.crossfitnutrition.com is confusingly similar to the CrossFit marks, especially in the context of the business of exercise and nutrition.   CrossFit offers nutritional services, including a seminar and nutritional publications both in print and on its website.   (*See* Doc. # 20 at ¶ 8).   Jenkins also offers nutritional products and information through the crossfitnutrition.com website.   The degree of similarity and overlap between the products and services is highly likely to give rise to confusion.   "Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods."   *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1055 (9th Cir. 1999).   *See also E & J Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992) ("Where goods are related or

10

complementary, the danger of consumer confusion is heightened."); *Quantum Fitness Corp. v. Quantum Lifestyle Ctrs. L.L.C.*, 83 F. Supp. 2d 810, 825 (S.D. Tex. 1999) (finding "particularly high" likelihood of confusion because of the "complementary nature of a health club and exercise equipment").   The likelihood of confusion is apparent from Jenkins's use of the word "crossfit" in connection with the nutritional information and products offered on the crossfitnutrition.com website.   (*See* Doc. # 21-4).   The addition of the word "nutrition" to "crossfit" does not change the overall impression that the nutritional information and products on the website are affiliated with, originate from, or are sponsored by CrossFit.   *See Marker International v. deBruler*, 635 F. Supp. 986, 999 (D. Utah 1986) (rejecting defendant's argument that "the addition of the words 'Surf America' to the [plaintiff's] name removes the confusing similarity.   A defendant in a trademark infringement or unfair competition case cannot prevail by simply adding a word to the one it shares with the plaintiff").   The well-pleaded allegations and evidence before the court support a finding that the crossfitnutrition.com domain is confusingly similar to the CrossFit marks.


   3.   Bad Faith Intent

   "The ACPA enumerates nine nonexclusive factors to assist the court in determining whether the use of a trademark involves a bad faith intent to profit." *Utah Lighthouse,* 527 F.3d at 1057 (citing 15 U.S.C. § 1125(d)(1)(B)(i)).   "In determining whether a person has a bad faith intent . . . a court may consider factors such as but not limited to –

> * * *
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

11

* * *
(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
* * * and
(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of [subsec. (c)(1) of this section].

15 U.S.C. § 1125(d)(1)(B)(i).   The factors "are not framed as exclusive or mandatory, . . . but are relevant guidelines."   *Morrison & Foerster, LLP v. Wick*, 94 F. Supp. 2d 1125, 1131 (D. Colo. 2000) (citation omitted).

These factors are present here.   The infringing domain name specifically contains CrossFit's name in the website, creating a likelihood of confusion.   Jenkins uses the CrossFit marks as part of an affiliate marketing program whereby he can earn monetary commissions. *See Utah Lighthouse Ministry*, 527 F.3d at 1058 ("A defendant could also intend to profit by diverting customers from the website of the trademark owner to the defendant's own website, where those consumers would purchase the defendant's products or services instead of the trademark owner's.").   After being notified of CrossFit's rights and registrations in the marks, Jenkins has willfully disregarded cease and desist notices from CrossFit and refused to stop using the infringing domain name or to transfer the domain.   *See Louis Vuitton Malletier*, 211 F. Supp. 2d at 585 ("Willfulness can be inferred by the fact that a defendant continued infringing behavior after being given notice.") (citations omitted).   Jenkins has offered to sell the domain to CrossFit and threatened to auction the domain.   The well-pleaded allegations and evidence before the court support a finding that Jenkins registered the domain with bad faith intent to profit from the CrossFit marks.

C.      Statutory Maximum Damages under the ACPA

A plaintiff may elect as its measure of damages statutory damages in the amount of not less than $ 1,000.00 and not more than $ 100,000.00 per domain name, as the court considers just.   15 U.S.C. § 1125(d);   15 U.S.C. § 1117(d).   "[W]hen a plaintiff seeks statutory damages, the court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima."   *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1108 (S.D. Cal. 2012) (internal quotation marks and citation omitted).   The purpose behind the ACPA's statutory damages provision is not merely to compensate a plaintiff for its injury, but also to discourage wrongful conduct by the defendant.   *E. & J. Gallo Winery v. Spider Webs Ltd.*, 286 F.3d 270, 278 (5th Cir.2002).   *See also City of Carlsbad v. Shah*, 850 F. Supp. 2d at 1108 (policy behind § 1117 damages is to "take all economic incentive out of trademark infringement.") (internal quotation marks and citation omitted).

Here, the court finds that damages in the amount of $100,000 are warranted.   "[T]he defendant's intent and behavior are the foremost consideration."   *Original Appalachian Artworks, Inc. v. J.F. Reichert, Inc.*, 658 F. Supp. 458, 465 (E.D.Pa.1987).   *See also Louis Vuitton Malletier and Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 585 (E.D. Pa. 2002) (awarding the statutory maximum damages of $100,000 based upon nature of defendant's conduct, including defendant's bad faith).   Jenkins has exhibited a bad faith intent in the use of the CrossFit marks.   The crossfinutrition.com domain name incorporates the entirety of the "CrossFit" name.   (*See* Doc. # 21-4).   Jenkins twice offered to sell the domain name back to CrossFit and threatened to auction the domain for a starting bid of $25,000.   (*See* Docs. # 20-4, # 20-5).   Jenkins used the crossfitnutrition.com website to obtain commissions as part of an affiliate marketing program, under which he could receive payment for a portion of the sales

generated from the products listed on the website.    (*See* Docs. # 21-5, # 21-6, # 21-7).

Jenkins's intent to divert customers from CrossFit for commercial gain is evidenced by the

likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the

crossfitnutrition.com website.    The undisputed allegations and evidence before the court

support an award of statutory damages in the amount of $100.000.00.    *See Mirage Resorts,*

*Inc. v. Cybercom Productions*, 228 F. Supp. 2d 1141, 1142 (D. Nev. 2002) (awarding statutory

damages of $100,000 by default judgment).


D.    Attorney Fees

        The ACPA provides that "[t]he court in exceptional cases may award reasonable attorney

fees to the prevailing party." 15 U.S.C. § 1117(a).    An award is within the discretion of the trial

court and will not be disturbed absent abuse of that discretion.    *Lindy Pen Co., Inc. v. Bic Pen*

*Corp.*, 982 F.2d 1400, 1409 (9th Cir. 1993) (citation omitted).    "The Lanham Act does not

define what is an 'exceptional' case, but we have determined it occurs when a trademark

infringement is malicious, fraudulent, deliberate, or willful."    *United Phosphorous, Ltd. v.*

*Midland Fumigant, Inc.*, 205 F.3d 1219, 1232 (10th Cir. 2000) (citations omitted).    *See also*

*Gucci America, Inc. v. Rebecca Gold Enterprises, Inc.*, 802 F. Supp. 1048, 1050 (S.D.N.Y.

1992) ("Courts construing 'exceptional' have interpreted it to refer to cases involving deliberate

or willful infringement.") (citations omitted).

        The well-pleaded allegations and evidence before the court support a finding that

Jenkins acted deliberately, willfully, and in bad faith by using the domain name

crossfitnutrition.com in an effort to confuse consumers and to divert Internet traffic to his web

site for his own economic gain.    Jenkins's failure to appear in this action further demonstrates

14

the exceptional nature of this case and the propriety of awarding attorney's fees to CrossFit.

*See Taylor Made Golf Co. v. Carsten Sports, Ltd.*, 175 F.R.D. 658, 663 (S.D. Cal. 1997) ("[A]

case may be considered 'exceptional' where the defendant disregards the proceedings and

does not appear.") (citing *Lien v. Compusoft of Kalamazoo, Inc.*, No. 1:89CV-104, 1991 WL

641575, at *5 (W.D.Mich. 1991) ("given defendant's total disregard of these proceedings and

the underlying claims of trademark infringement at issue, this case is exceptional")).   The billing

compilations submitted by CrossFit sufficiently demonstrate that through December of 2013,

CrossFit incurred $18,996.00 in reasonable attorney fees for prosecution of the Complaint.

(*See* Declaration of You-Fong C. Amato at ¶ 13;   Exhibit 9 to Declaration of You-Fong C.

Amato (Doc. # 21-9)).


E.      Costs

        CrossFit also seeks reimbursement of its costs incurred in this action, under both Fed. R.

Civ. P. 54(d)(1) and the Lanham Act, 15 U.S.C. § 1117(a).   Rule 54(d)(1) provides that costs

should be allowed to a prevailing party.   Costs may be taxed under Rule 54(d) where they are

authorized by a federal statute.   *Faraca v. Fleet 1 Logistics, LLC*, 693 F. Supp. 2d 891, 896

(E.D. Wis. 2010).   Section 1117(a) provides that costs may be recovered for established

violations of the ACPA , 15 U.S.C. § 1125(d).   "In addition to being authorized by statute, a cost

must be both reasonable and necessary to the litigation for a prevailing party to recover it."   *Id.*

        CrossFit is the prevailing party in this action by virtue of Jenkins's default.   *See, e.g., J &*

*J Sports Productions, Inc. v Paz-Padilla*, No. 3:12-cv-02228-GPC-WMC, 2013 WL 6002872, at

* 1 (S.D. Cal. Nov. 12, 2013) ("a plaintiff who obtains a default judgment may be considered a

prevailing party for purposes of awarding fees and costs . . .") (citation omitted);   *Local 881*

*United Food and Commercial Workers Union v. Food Club of Indiana d/b/a Valumart Foods*, No. 2:11–CV–161–TLS, 2011 WL 3501721, at ** 2-3 (Aug. 10, 2011) (awarding costs under Rule 54(d)(1) on default judgment);   *St. Paul Fire & Marine Ins. Co. v. AVH Trucking LLC*, No. 07-4802, 2008 WL 4601771, at * 5 (D.N.J. Oct. 15, 2008) (same).   CrossFit has established its ACPA claim by the well-pleaded allegations and evidence.   It has incurred $3,784.09 in compensable litigation costs, which consist of filing fees and service fees, including the hiring of a private investigator to locate and serve Jenkins.   (*See* Doc. # 20 at ¶ 14).

F.     Transfer of the Domain

The Lanham Act authorizes the court to "order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark."   15 U.S.C. § 1125(d)(1)(C).   *See Eurotech, Inc. v. Cosmos European Travels AG*, 213 F. Supp. 2d 612, 627 (E.D. Va. 2002) (ordering transfer of the infringing domain name to the trademark owner); *Aztar Corp. v. MGM Casino*, No. 00-833-A, 2001 WL 939070, at *2 (E.D. Va. April 9, 2001) (ordering transfer of the infringing domain name to trademark owner by default judgment).   As Jenkins is in default, the allegations in the Complaint must be taken as true, and CrossFit has established its ACPA claim, it is appropriate for the court to issue an order transferring the crossfitnutrition.com domain name to CrossFit.

G.     Permanent Injunction

Under the Lanham Act, the court has the authority to grant injunctive and other equitable relief to prevent further violations of a plaintiff's trademark rights.   15 U.S.C. § 1116.   *See also John Allan Co. v. Craig Allen Co. L.L.C.*, 540 F.3d 1133, 1142 (10th Cir. 2008) (a court "has the

16

power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent . . . a violation [of the Act]"). "[D]istrict courts should apply traditional equitable principles in deciding whether to grant permanent injunctive relief, and the decision is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *Chanel Inc. v. Yang*, No. C 12-4428 PJH, 2013 WL 5755217, at * 11 (N.D. Cal. Oct. 21, 2013) (internal quotation marks and citations omitted). "In determining whether to issue a . . . permanent injunction, a court must consider whether the movant has established: (1) success on the merits; (2) irreparable injury if the injunction does not issue; (3) the threatened injury to it outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction will not be adverse to the public interest." *Morrison & Foerster, LLP v. Wick*, 94 F. Supp. 2d 1125, 1129 (D.Colo. 2000) (citations omitted). *See also K-TEC v. Vita-Mix*, 765 F. Supp. 2d 1304, 1317 (D. Utah 2011) ("The court should grant injunctive relief if a plaintiff shows that (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, the balance favors the plaintiff and an equitable remedy is warranted; and (4) the public interest would not be disserved by a permanent injunction.") (citation omitted).

Here, all of the elements for injunctive relief are satisfied and traditional equitable principles weigh in favor of an injunction. CrossFit has adequately demonstrated that Jenkins's actions have caused and will continue to cause irreparable harm to CrossFit. CrossFit has demonstrated a likelihood of confusion based on Jenkins's use of the CrossFit name and the overlap of nutritional products and services offered on his website. In cybersquatting cases, "[w]here a plaintiff can show probable success in proving a likelihood of consumer confusion,

irreparable harm is properly presumed." *Ballistic Products, Inc. v. Precision Reloading, Inc.*, No. Civ. 03-2950 ADM/AJB, 2003 WL 21754816, at * 5 (D. Minn. July 28, 2003) (internal quotation marks and citation omitted). *See also Vogster Entm't, LLC v. Mostovoy*, No. 09 Civ. 1036, 2009 WL 691215, at *6 (E.D.N.Y. Mar. 16, 2009) (in a cybersquatting case, "irreparable harm may be presumed where there is a likelihood of success on the merits.") (citation omitted). Monetary damages are inadequate to force Jenkins to cease his infringing conduct, as demonstrated by his disregard of CrossFit's cease and desist demands and this lawsuit, his threats to sell or auction the domain name, and his continued use of the CrossFit marks. Jenkins's past actions indicate that he will continue to violate CrossFit's trademarks.

As to the balance of harms, Jenkins has failed to appear, answer or defend and is thus deemed to have conceded the factual allegations in the Complaint. The allegations and evidence support a finding that Jenkins's conduct is willful and deliberate. (*See, e.g.,* Docs. # 20-4, # 20-5). Jenkins has not provided any evidence of hardship in the event an injunction is granted. The irreparable harm that has been and will continue to be suffered by CrossFit outweighs any potential harm that Jenkins may suffer from an injunction.

Finally, "protecting the rights of the owner of a registered trademark is consistent with the public interest . . . ." *Icon Health & Fitness, Inc. v. Medical Productions*, No. 10-cv-00207-DN, 2012 WL 3962737, at *6 (D. Utah Sept. 11, 2012) (citation omitted). An injunction that "merely protects [the plaintiff's] trademark . . .is directly aligned with public policy interests . . ." *Id.* "[T]he public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *New York City Triathlon, LLC v. NYC Triathlon*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010) (citations omitted). "It is in the public interest to protect [CrossFit's] marks . . . because [Jenkins's] infringing domain

name[ ] and use of [CrossFit's] marks . . . are likely to confuse the public as to both the source and sponsorship of [Jenkins's] website" and "to divert Internet users form their intended online destinations."  *Faegre & Benson, LLP v. Purdy*, No. Civ. 03-6472(MJD/JGL), 2004 WL 167570, at * 3 (D. Minn. Jan 5, 2004).  "A trademark infringement involving an Internet domain name would constitute a misuse of the Internet . . . ."  *Ballistic Products*, 2003 WL 21754816, at * 7 (citation omitted).  "There is a strong public interest in stopping" misuse of the Internet.  *Id.*

H.    Doe Defendants

There is no provision in the Federal Rules of Civil Procedure for the naming of fictitious or anonymous parties in a lawsuit.  *Coe v. U.S. Dist. Court for Dist. of Colorado*, 676 F.2d 411, 415 (10th Cir. 1982).  The Federal Rules provide that "[e]very pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation.  The title of the complaint must name all the parties . . . ."  Fed. R. Civ. P. 10(a).  *See also Wenzel v. Arpaio*, No. CV 09-1927-PHX-MHM (JRI), 2009 WL 4154926, at * 3 (D. Ariz. Nov. 20, 2009) ("Generally, the use of anonymous type appellations to identify defendants is not favored. Rule 10(a) of the Federal Rules of Civil Procedure requires the plaintiff to include the names of the parties in the action.");  *Watson v. Unipress, Inc.*, 733 F.2d 1386, 1388 (10th Cir. 1984) (Under Colorado law, naming of "John Doe" defendant does not toll statute of limitations with respect to such defendant);  *Tolefree v. Ritz*, 382 F.2d 566, 567 (9th Cir. 1967) (per curiam) (affirming dismissal "as to the fictitious defendants . . . .") (citation omitted).  Because anonymous parties are not permitted by the Federal Rules, the time period for serving the summons and complaint has expired, and CrossFit has not identified the anonymous Defendants, the Doe Defendants are properly dismissed from the Complaint.

Accordingly, IT IS RECOMMENDED that:

1.      Plaintiff's ". . . Motion for Entry of Default Judgment and Permanent Injunction." (filed January 14, 2014) (Doc. # 18) be GRANTED.

2.      That pursuant to Fed. R. Civ. P. 55(b)(2), default judgment be entered in favor of Plaintiff CrossFit, Inc. and against Defendant Jenkins on Count IV of the Complaint for violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), in the total amount of $122,780.09, including $100,000 in statutory damages, $18,996.00 in attorney's fees, and $3,784.09 in costs pursuant to the Lanham Act, 15 U.S.C. § 1117(a) and (d), plus post judgment interest at the rate of .12%.

3.      That the domain name registrar, GoDaddy.com, be ordered to transfer the domain name "crossfitnutrition.com" to CrossFit, Inc. within 10 days after service of a copy of the court's order.

4.      That a permanent injunction be entered against Defendant Jenkins, restraining and enjoining him, his officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with him, from making any present or future use whatsoever of the Internet domain name crossfitnutrition.com, the CrossFit marks, or any derivation thereof.

5.      The Doe Defendants be dismissed from this action.


**Advisement to the Parties**

Within **fourteen days** after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);   *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).

A general objection that does not put the District Court on notice of the basis for the objection

will not preserve the objection for *de novo* review.   "[A] party's objections to the magistrate

judge's report and recommendation must be both timely and specific to preserve an issue for de

novo review by the district court or for appellate review."   *United States v. One Parcel of Real*

*Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir.

1996).   Failure to make timely objections may bar *de novo* review by the District Judge of the

Magistrate Judge's proposed findings and recommendations and will result in a waiver of the

right to appeal from a judgment of the district court based on the proposed findings and

recommendations of the magistrate judge.   *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th

Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo*

despite the lack of an objection does not preclude application of the "firm waiver rule");

*International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d

901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order,

cross-claimant had waived its right to appeal those portions of the ruling);   *Ayala v. United*

*States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived

their right to appeal the Magistrate Judge's ruling).   *But see, Morales-Fernandez v. INS*, 418

F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice

require review).

        DATED at Denver, Colorado, this 28th day of March, 2014.

                        BY THE COURT:


                        ____s/Craig B. Shaffer_____
                        United States Magistrate Judge

21