IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01219-MSK-CBS

CROSSFIT, INC., a Delaware corporation,
        Plaintiff,
v.

MURRELL A. JENKINS, an individual, and
DOES 1-10,
        Defendants.

---

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE UPON
RECONSIDERATION PURSUANT TO ORDER DATED APRIL 21, 2014 (DOC. # 27)

---

Magistrate Judge Craig B. Shaffer

This civil action comes before the court for reconsideration of Plaintiff's ". . . Motion for Entry of Default Judgment and Permanent Injunction," pursuant to the Order Declining Report and Recommendations (Doc. # 27).   The court declined to adopt the Recommendation filed on March 28, 2014 for several reasons: "the findings of fact were not limited to well pled allegations, . . . the Motion for Default Judgment was not served upon Defendant Murrell", several Doe Defendants are named, and "there has been no evidentiary determination of the loss that has or will be suffered" under "[f]our different theories for recovery [that] have been alleged, for which the measure of loss/damages vary."   (See Order (Doc. # 27)).

I.      Statement of the Case

Plaintiff CrossFit, Inc. ("CrossFit") is principally engaged in the business of fitness training and consulting.   (See Complaint (Doc. # 1) at ¶ 5).   CrossFit owns protectable interests in several registered United States trademarks and service marks comprised of the term

1

"CrossFit."   (*See id.*).   Defendant Murrell A. Jenkins a/k/a "Jake" Jenkins ("Jenkins") is an individual doing business as "CrossFit Nutrition."   (*See* Doc. # 1 at ¶ 6).   Jenkins owns and controls a website with the domain name www.crossfitnutrition.com, which offers vitamins, supplements, and nutrition products for sale.   (*See id.*).   This case arises out of Jenkins's alleged infringement of the CrossFit marks, among other unlawful conduct.   CrossFit alleges that Jenkins utilizes the CrossFit marks to trade on the goodwill associated with the CrossFit name through the website with the domain name www.crossfitnutrition.com.   In its Complaint, CrossFit alleged four Counts for violations of the Lanham Act, including false designation of origin, trademark infringement, trademark dilution, and cyperpiracy under the Anticybersquatting Consumer Protection Act ("ACPA").   (*See* Doc. # 1 at 6-10 of 12).   In its Motion for Entry of Default Judgment and Permanent Injunction, CrossFit seeks default judgment against Defendant Jenkins on only Count IV of the Complaint for violation of the ACPA, 15 U.S.C. § 1125(d).   In Count IV, CrossFit seeks monetary relief of $100,000 in statutory damages $18,996.00 in attorney's fees, and $3784.09 in costs, for a total of $122,780.09.   (*See* Doc. # 19).   CrossFit also seeks an order requiring the domain name registrar to transfer the www.crossfitnutrition.com domain to CrossFit, and a permanent injunction precluding Jenkins from using the CrossFit marks.   (*See id.*).

II.   Analysis

Fed. R. Civ. P. 55 provides for entry of default judgment "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . ."   *McNeil v. United States*, No. 01-5007, 12 F. App'x 805, 807 n. 1 (10th Cir. May 2, 2001).   *See also Jackson v. FIE Corp.*, 302 F.3d 515, 525 (5th Cir. 2002) ("[D]efendant by his default, admits the

plaintiff's well-pleaded allegations of fact, is precluded from challenging those facts by the judgment, and is barred from contesting on appeal the facts thus established.") (internal quotation marks and citations omitted);   *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir.1987) ("The effect of a default judgment is that the defendant admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.") (internal quotation marks omitted).

A.     Subject Matter Jurisdiction, Venue, and Personal Jurisdiction

"In determining whether a default judgment is warranted, the Court must first consider whether it has jurisdiction over the subject matter and the defendants."   *Procom Supply, LLC v. Langner*, No. 12-cv-00391-MSK-KMT, 2013 WL 4510243, at * 6 (D. Colo. Aug. 24, 2013) (citations omitted).   Here, the court has subject matter jurisdiction over CrossFit's claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §§ 1338(a) and (b), as the claims arise under the trademark laws of the United States.   Venue is proper in this court pursuant to 28 U.S.C. §§ 1391 and 1400.

Personal jurisdiction over the defendant is required before a default judgment in a civil case may be entered.   *See Hukill v. Okla. Native Am. Domestic Violence Coalition*, 542 F.3d 794, 797 (10th Cir. 2008) ("[A] default judgment in a civil case is void if there is no personal jurisdiction over the defendant.").   *See also Dennis Garberg & Assocs. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997) ("[J]udgment by default should not be entered without a determination that the court has jurisdiction over the defendant.").   "Plaintiff bears the burden of establishing personal jurisdiction, but where, as here, the issue is determined on the basis of the pleadings and affidavits, that burden may be met by a prima facie showing."   *Sharpshooter*

3

*Spectrum Venture, LLC v. Consentino*, No. 09-cv-0150-WDM-KLM, 2011 WL 3159094, at *2

(D. Colo. July 26, 2011) (citing *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011)).

"Where, as here, the underlying action is based on a federal statute, the court applies

state personal jurisdiction rules if the federal statute does not specifically provide for national

service of process." *Toytrackerz LLC v. Koehler*, No. 08-2297-GLR, 2009 WL 1505705, at * 3

(D. Kan. May 28, 2009).   Because neither the Lanham Act, 15 U.S.C. § 1051 *et seq.*, nor the

Anti–Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S. C. § 1125(d), provide for

nationwide service of process, the court looks to the Colorado long-arm statute to determine

whether personal jurisdiction is proper.   *Toytrackerz*, 2009 WL 1505705, at * 4.

After unsuccessful attempts to informally resolve this matter, CrossFit filed this action on

May 8, 2013.   (*See* Doc. # 1).   On June 16, 2013, Jenkins was personally served with the

summons and complaint.   (*See* "Proof of Service" (Doc. # 8)).   His responsive pleading was

due on or before July 8, 2013.   *See* Fed. R. Civ. P. 12(a)(1)(A)(i).   To date, Jenkins has not

appeared, filed an Answer, or otherwise responded in this action.   Upon CrossFit's motion the

Clerk of the Court entered default on August 1, 2013.   (*See* Docs. # 12, # 13).

The well-pleaded allegations and record before the court indicate that Jenkins is a

resident of Colorado.   Colorado Secretary of State records reflect that Jenkins's company,

Aaron Corporate Enterprises, Inc., was formed and is located in Colorado.   (*See* Exhibit 3 to

Declaration of You-Fong C. Amato (Doc. # 21-3)).   As registered agent for the corporation,

Jenkins provided his address in Monument, Colorado.   (*See id.*).   Jenkins is subject to

personal jurisdiction in this court as a resident of Colorado.

Even if Jenkins were not a Colorado resident, the court would have personal jurisdiction

over him based on his activities in this state.   Colorado's long arm statute provides that a

defendant is subject to personal jurisdiction where he or she engages in the "transaction of any business within this state" or commits a "tortious act within this state."   Colo. Rev. Stat. § 13-1-124.   Jenkins incorporated Aaron Corp. in Colorado.   Jenkins and Aaron Corp. are the registrants for www.crossfitnutrition.com.   (*See* Exhibit 2 to Declaration of You-Fong C. Amato (Doc. # 21-2)).   Jenkins has admitted to "owning" the website, offered it for sale to CrossFit, and threatened to auction the domain.   (*See* Declaration of Marshall S. Brenner (Doc. # 20) at ¶ 11);   Exhibit D to Declaration of Marshall S. Brenner (Doc. # 20-4)).   Aaron Corp. is listed as the "publisher" for the marketing affiliate program for the product companies whose products are listed at www.crossfitnutrition.com.   (*See* Exhibits 5-7 to Declaration of You-Fong C. Amato (Docs. # 21-5, # 21-6, # 21-7)).   Under Colorado's long arm statute, Jenkins is subject to personal jurisdiction in Colorado based on the transaction of business and the commission of a tort in Colorado.   *See Toytrackerz,* 2009 WL 1505705, at * 5 (holding that plaintiffs "made a prima facie showing that the alleged tortious actions of the Individual Defendants subject them to jurisdiction under the 'commission of a tortious act' provision of the Kansas long-arm statute. . . The allegedly tortious conduct includes common law trademark infringement . . .");   *Sys. Designs, Inc. v. New CustomWare Co.*, 248 F. Supp. 2d 1093, 1097 (D. Utah 2003) ("Trademark infringement is a tort.   In a tort case, . . . jurisdiction may attach if the defendant's conduct is aimed or has an effect in the forum state.").

B.   Service of the Motion[1]

In the context of a default judgment motion, the only service requirements are those pertaining to the service of the summons and complaint.   Federal Rule of Civil Procedure

---

[1]   The court noted that "[t]he Motion for Default Judgment was not served upon Defendant Murrell and he has not had the opportunity to respond . . . ."   (See Doc. # 27).   The only named Defendant in

55(b)(2) states that service of an application for default judgment is required only "[i]f the party against whom a default judgment is sought has appeared personally or by a representative . . ." Fed. R. Civ. P. 55(b)(2).   *See also, e.g., Hukill*, 542 F.3d 794, 799, 802 (10th Cir. 2008) (setting aside default judgment due to ineffective service of summons and complaint);   *Nikwei v. Ross School of Aviation, Inc.*, 822 F.2d 939, 945-46 (10th Cir. 1987) (affirming the grant of default judgment against defendants notwithstanding challenges to sufficiency of service of process as to complaint based on finding that complaint was sufficiently served on defendants).

"[D]efault judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party.   In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.   The default judgment remedy serves as such a protection."   *In re Rains*, 946 F.2d 731, 732–33 (10th Cir. 1991) (internal quotation marks and citation omitted). The record shows that Jenkins was properly served with the summons and Complaint and has failed to plead or otherwise respond.   *See State Res. Corp. v. Sirios*, 10–cv–00243–PAB– MJW, 2011 WL 318754, at *2 (D.Colo. Jan. 28, 2011) (holding that entry of default judgment was proper when "[d]efendant's failure to respond [had] thwarted the ability of the Court to resolve the matter on the merits");   *Victoria's Secret Stores v. Artco Equip. Co.*, 194 F. Supp. 2d 704, 732-33, 738 (S.D. Ohio 2002) (granting default judgment on ACPA claim where court found defendants' actions showed complete lack of diligence in defending the suit and a reckless disregard for the effect of their conduct on the proceedings).

C.     The Doe Defendants

CrossFit seeks entry of default judgment against only Defendant Jenkins.   (*See* Doc. #

---

the case is Murrell A. Jenkins.                    6

18 at 1 of 2).   CrossFit does not request that default judgment be entered against any of the Doe Defendants.   Default judgment may be granted against a named defendant notwithstanding the existence of unidentified Doe defendants.   *See, e.g., Rolex Watch U.S.A., Inc. v. Lynch*, No. 2:12-cv-542-FtM-38UAM, 2013 WL 2897939, at * 8 (M.D. Fla. June 12, 2013) (recommending default judgment be entered against named defendant and Doe defendants be dismissed, where plaintiff stated it would voluntarily dismiss complaint against unknown defendants upon entry of default judgment against named defendant); *Cuevas v. Check Resolution Servs.*, No. 2:12-cv-00981 KJM KJN, 2013 WL 2190172, at *13 (E.D. Cal. May 17, 2013) (recommending that default judgment be entered and statutory damages, attorney's fees and costs be awarded against named Defendant and that Doe defendants be dismissed sua sponte, where complaint failed to state any factual allegations against them and plaintiff consented to their dismissal); *Flythe v. Solomon and Strauss, LLC*, No. 09-6120, 2011 WL 2314391, at * 2 (E.D. Pa. June 8, 2011) (granting plaintiff's motion for entry of default judgment in part and ordering plaintiff to show cause why Doe defendants should not be dismissed without prejudice); *Christiana Bank & Trust Co. v. Dalton*, No. 06-CV-3206 (JS) (ETB), 2009 WL 4016507, at *2-3 (E.D.N.Y. Nov. 17, 2009) (motion for default judgment denied without prejudice as to Doe defendants where complaint stated no grounds for even nominal relief against them); *Pruco Life Ins. Co. v. Akhondi*, No. CIV S-02-2534 WBS EFB, 2007 WL 1139410, at * 2-3 (E.D. Cal. Apr. 17, 2007) (recommending that default judgment be entered against named defendant and that unidentified defendants be dismissed without prejudice).

Further, there is no provision in the Federal Rules of Civil Procedure for the naming of fictitious or anonymous parties in a lawsuit.   *Coe v. U.S. Dist. Court for Dist. of Colorado*, 676 F.2d 411, 415 (10th Cir. 1982).   *See also* Fed. R. Civ. P. 10(a) ("[e]very pleading must have a

caption with the court's name, a title, a file number, and a Rule 7(a) designation.   The title of the complaint must name all the parties . . . .");   *Wenzel v. Arpaio*, No. CV 09-1927-PHX-MHM (JRI), 2009 WL 4154926, at * 3 (D. Ariz. Nov. 20, 2009) ("Generally, the use of anonymous type appellations to identify defendants is not favored.   Rule 10(a) of the Federal Rules of Civil Procedure requires the plaintiff to include the names of the parties in the action.").   CrossFit has never amended its pleading to substitute any named defendants for the Doe Defendants. It has not served process on any of the Doe Defendants as required by Fed R. Civ. P. 4 and the Clerk of the Court has not entered default of any Doe Defendants pursuant to Rule 55(a). CrossFit does not object to dismissal of the Doe Defendants upon the entry of default judgment against Defendant Jenkins.

D.   Sufficiency of CrossFit's Claim for Violation of the ACPA

CrossFit seeks default judgment against Defendant Jenkins on only Count IV of the Complaint for violation of the ACPA, 15 U.S.C. § 1125(d).   Defendant Jenkins has relieved CrossFit of the burden of proving its factual allegations supporting his violation of the ACPA by failing to answer the complaint.   *United States v. Craighead*, No. 05-6227, 176 F. App'x 922, 924 (10th Cir. Apr. 12, 2006).   "Upon review of a motion for default judgment, . . . the Court must decide whether the unchallenged facts create a legitimate basis for the entry of a judgment."   *Jones v. Wells Fargo Bank, N.A.,* No. 13-cv-02210-MSK-KLM, 2014 WL 3906297, at * 8 (D. Colo. Aug. 7, 2014) (internal quotation marks and citation omitted).   "Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true."   *Dundee Cement Company v. Howard Pipe & Concrete Products*, 722 F.2d 1319, 1323 (7th Cir. 1983). *See also Jones,* 2014 WL at 3906297, at * 8 ("The Court deems the well-pled facts (as opposed

8

to merely conclusory statements) of the Complaint in this matter to be true.") (citation omitted). "[T]he Court must determine whether the allegations contained in Plaintiff's Complaint are sufficient to state a claim for relief." *Jones,* 2014 WL at 3906297, at * 8. "To state a claim for relief, the Complaint must contain sufficient factual matter, accepted as true, to show that the claim is plausible on its face." *Id.* (citations omitted). "A claim is facially plausible when the plaintiff pleads facts that allow the court to reasonably infer that the defendant is liable for the alleged conduct." *Id.*

"Congress enacted the Anti–Cybersquatting Protection Act (ACPA), 15 U.S.C. § 1125(d), to address a new form of piracy on the Internet caused by acts of cybersquatting, which refers to the deliberate, bad-faith, and abusive registration of Internet domain names in violation of the rights of trademark owners." *Utah Lighthouse Ministry v. Foundation for Apologetic Information and Research*, 527 F.3d 1045, 1057 (10th Cir. 2008) (internal quotation marks and citation omitted) "The ACPA provides for liability if a person registers, traffics in, or uses a domain name that is identical or confusingly similar to a distinctive mark, with a bad faith intent to profit from that mark." *Id.* (citing 15 U.S.C. § 1125(d)(1)(A)). *See also iYogi Holding Pvt. Ltd. V. Secure Remote Support, Inc.*, No. C-11-0592 CW, 2011 WL 6291793, at * 16 (N.D. Cal. Oct. 25, 2011) ("In order to state a claim under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), a trademark owner must show the defendant (1) registered, trafficked in, or used a domain name, (2) that is confusingly similar to the plaintiff's trademark, and (3) had a bad faith intent to profit from that domain name.") (citing 15 U.S.C. § 1125(d)(1)(A) and *Verizon California Inc. v. Navigation Catalyst Systems, Inc.*, 568 F.Supp.2d 1088, 1094 (C.D.Cal. 2008)). Here, the court concludes that the well-pleaded allegations support CrossFit's claim for violation of the ACPA by Defendant Jenkins.

1.      Registration, Trafficking in, or Use of a Domain Name

According to the well-pleaded allegations, CrossFit is a Delaware Corporation principally engaged in the business of fitness training and consultancy.   (*See* Doc. # 1 at ¶ 5).   CrossFit owns several registered United States trademarks and service marks comprised of the word mark "CrossFit," including: (a) registered U.S. Service Mark Registration No. 3,007,458 issued on October 18, 2005, for use in fitness training; (b) U.S. Trademark Registration No. 3,826,111 issued on July 27, 2010, for use on clothing goods; and (c) registered U.S. Service Mark Registration No. 4,049,689 issued on November 1, 2011, for use in fitness, nutrition, sports, and exercise services, lectures, seminars, workshops, and training provided through television and the Internet, including websites, online publications of journals, and podcasts ("CrossFit Marks.").   (*See* Doc. # 1 at ¶ 10).   The CrossFit Marks have been in continuous use in commerce since at least the dates of their registrations to the present.   (*See id.*).

Defendant Jenkins is an individual residing in the El Paso County, Colorado area, who is doing business as "CrossFit Nutrition."   (*See* Doc. # 1 at ¶¶ 6, 11).   Jenkins is the registrant of the www.crossfitnutrition.com domain name.   (*See* Doc. # 1 at ¶ 50).   Jenkins owns and controls the website with the domain name crossfitnutrition.com, which offers health and sports performance related vitamins, supplements, and other nutrition products for sale.   (*See* Doc. # 1 at ¶¶ 6, 11).   Jenkins was and is aware of CrossFit's prior use, ownership, and registration of the CrossFit Marks.   (*See* Doc. # 1 at ¶ 14).   CrossFit has never authorized or licensed Jenkins to use the CrossFit Marks on or in connection with his services and/or products.   (*See* Doc. # 1 at ¶ 18).   CrossFit has alleged facts sufficient to support the first element of its ACPA claim, that Defendant Jenkins registered, trafficked in, or used a domain name that incorporates a CrossFit mark.

2.      Identical or Confusingly Similar to Distinctive or Famous Mark

To prevail on its ACPA claim, CrossFit must show that the crossfitnutrition.com domain name registered by Jenkins is identical or confusingly similar to distinctive or famous marks. *Utah Lighthouse*, 527 F.3d at 1057.   To determine whether CrossFit's marks are distinctive or famous, the court may consider the following factors:

> (A) the degree of inherent or acquired distinctiveness of the mark; (B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used; (C) the duration and extent of advertising and publicity of the mark; (D) the geographical extent of the trading area in which the mark is used; (E) the channels of trade for the goods or services with which the mark is used; (F) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought; (G) the nature and extent of use of the same or similar marks by third parties.

15 U.S.C. § 1125(c)(1).

CrossFit licenses use of its intellectual property, including the "CrossFit" name, to affiliates that have received particularized training and certification from CrossFit.   (*See* Doc. # 1 at ¶ 50).   CrossFit's careful cultivation, maintenance, and protection of its intellectual property rights has enabled CrossFit to amass considerable goodwill within its industry, and the CrossFit name is widely recognized around the world.   (*See* Doc. # 1 at ¶ 9).   Consumers readily and singularly associate the CrossFit name with CrossFit's business and services.   (*See id.*).   CrossFit diligently protects its intellectual property through, *inter alia*, trademark and service mark registration.   (*See* Doc. # 1 at ¶ 10).   The CrossFit Marks were distinctive and famous at the time Defendant Jenkins registered the domain name.   (*See* Doc. # 1 at ¶¶ 51-52).   CrossFit has alleged facts sufficient to show that the CrossFit Marks are famous and distinctive. *See, e.g., Southeastern Louisiana Entertainment, L.L.E. v. Hollywood Entertainment Corp.*, No. CIV.A.00-1026, 2000 WL 1251952, at * 3 (E.D. La. Sept. 1, 2000) ("a famous mark is one which

11

has been developed extensively enough to have significant marketing value to the owner and to cause a recognizable association to the public").

CrossFit offers nutritional services, including a seminar and nutritional publications both in print and on its website.   Jenkins also offers nutritional products and information through the crossfitnutrition.com website.   Defendant Jenkins advertises nutrition products for sale using the CrossFit name through the same marketing channels that CrossFit utilizes, including Internet media.   (*See* Doc. # 1 at ¶ 12).   The degree of similarity and overlap between the products and services is highly likely to give rise to confusion.   "Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods." *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1055 (9th Cir. 1999).   *See also E & J Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992) ("Where goods are related or complementary, the danger of consumer confusion is heightened.");   *Quantum Fitness Corp. v. Quantum Lifestyle Ctrs. L.L.C.*, 83 F. Supp. 2d 810, 825 (S.D. Tex. 1999) (finding "particularly high" likelihood of confusion because of the "complementary nature of a health club and exercise equipment").

The likelihood of confusion is apparent from Jenkins's use of the word "crossfit" in connection with the nutritional information and products offered on the crossfitnutrition.com website.   The addition of the word "nutrition" to "crossfit" does not change the overall impression that the nutritional information and products on the website are affiliated with, originate from, or are sponsored by CrossFit.   *See Marker International v. deBruler*, 635 F. Supp. 986, 999 (D. Utah 1986) (rejecting defendant's argument that "the addition of the words 'Surf America' to the [plaintiff's] name removes the confusing similarity.   A defendant in a trademark infringement or unfair competition case cannot prevail by simply adding a word to the

one it shares with the plaintiff").

Jenkins's use of the CrossFit name creates the false impression that he is a licensed CrossFit affiliate and/or that his products are endorsed or sponsored by, associated with, or originate from CrossFit, thereby creating consumer confusion.   (*See* Doc. # 1 at ¶ 12).   The consumer confusion caused by Jenkins's use of the CrossFit name is exacerbated by his extensive use of interactive social media such as Twitter and Facebook to promote his business, which allows him to continuously communicate with consumers in real time to directly reinforce the misperception that he and his products are affiliated or otherwise associated with CrossFit.   (*See* Doc. # 1 at ¶ 12).   Jenkins's Facebook and Twitter pages include posts advertising the offering of nutrition products with express reference to the CrossFit Marks.   (*See id.*).   The CrossFit Marks are prominently displayed on Jenkins's Facebook and Twitter pages, as well as his website.   (*See id.*).   Jenkins uses the CrossFit Marks with the intent to mislead consumers into believing that his products are affiliated with, originate from, and/or are sponsored by CrossFit, with the intent to profit by trading on CrossFit's goodwill.   (*See* Doc. # 1 at ¶ 13).   CrossFit has presented well-pleaded allegations sufficient to show that the crossfitnutrition.com domain is confusingly similar to the CrossFit Marks.

Jenkins's explicit use of the CrossFit Marks is a deliberate attempt to make his goods and services look as if they originate from CrossFit, give them the credibility associated with CrossFit, and confuse the consumer.   (*See* Doc. # 1 at ¶ 19).   Jenkins's use of the CrossFit Marks is likely to cause initial interest, confusion, or mistake, or deceive purchasers, potential purchasers, and the consuming public and trade as to the source or sponsorship or approval of his services and/or products, and/or as to his affiliation with CrossFit, and is thereby causing harm to CrossFit's reputation and goodwill.   (*See* Doc. # 1 at ¶ 20).   Jenkins's unlawful

13

conduct is causing and will continue to cause harm to CrossFit because consumers seeing

Jenkins's advertisements for services and/or goods sold under the CrossFit Marks will believe

that the services and/or goods are associated with CrossFit and/or CrossFit's marks.  (*See*

Doc. # 1 at ¶ 22).   The court concludes that CrossFit has alleged facts sufficient to support the

second element of its ACPA claim.

3.      Bad Faith Intent

To prevail on its ACPA claim, CrossFit must also show that Defendant Jenkins used or

registered the crossfitnutrition.com domain name "with a bad faith intent to profit."   *Utah*

*Lighthouse*, 527 F.3d at 1057.    "The ACPA enumerates nine nonexclusive factors to assist the

court in determining whether the use of a trademark involves a bad faith intent to profit."   *Utah*

*Lighthouse,* 527 F.3d at 1057 (citing 15 U.S.C. § 1125(d)(1)(B)(i)).   "In determining whether a

person has a bad faith intent . . . a court may consider factors such as but not limited to –

> * * *
> (IV) the person's bona fide noncommercial or fair use of the mark in a site
> accessible under the domain name;
>
> (V) the person's intent to divert consumers from the mark owner's online location
> to a site accessible under the domain name that could harm the goodwill
> represented by the mark, either for commercial gain or with the intent to tarnish or
> disparage the mark, by creating a likelihood of confusion as to the source,
> sponsorship, affiliation, or endorsement of the site;
>
> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the
> mark owner or any third party for financial gain without having used, or having an
> intent to use, the domain name in the bona fide offering of any goods or services,
> or the person's prior conduct indicating a pattern of such conduct;
>
> * * * and
>
> (IX) the extent to which the mark incorporated in the person's domain name
> registration is or is not distinctive and famous within the meaning of [subsec. (c)(1)
> of this section].

15 U.S.C. § 1125(d)(1)(B)(i).   The factors "are not framed as exclusive or mandatory, . . . but are relevant guidelines."   *Morrison & Foerster, LLP v. Wick*, 94 F. Supp. 2d 1125, 1131 (D. Colo. 2000) (citation omitted).

Jenkins is using the domain name in bad faith with the intent to profit from unauthorized use of the CrossFit Marks.   (*See* Doc. # 1 at ¶ 53).   The infringing domain name specifically contains CrossFit's name in the website, creating a likelihood of confusion.   *See Utah Lighthouse Ministry*, 527 F.3d at 1058 ("A defendant could also intend to profit by diverting customers from the website of the trademark owner to the defendant's own website, where those consumers would purchase the defendant's products or services instead of the trademark owner's.").

Jenkins's use of the CrossFit Marks is not fair use because: (1) his services and/or products are readily identifiable without use of the CrossFit Marks; (2) his use of the CrossFit Marks is excessive, in that he places the marks on most of the pages on the crossfitnutrition. com website and Face Book and Twitter pages, and within each page, the CrossFit Marks appear often and in prominent positions; and (3) he falsely suggests he is sponsored or endorsed by CrossFit by the frequent use of the CrossFit Marks on his website and social media pages.   (*See* Doc. # 1 at ¶ 23).

On or about March 6, 2013, CrossFit sent an e-mail to Defendant Jenkins, demanding him to cease and desist his use of the CrossFit Marks and the crossfitnutrition.com domain and to transfer the domain to CrossFit on the grounds that Jenkins' use of the CrossFit Marks was unauthorized and constituted infringement of CrossFit's rights in its marks.   (*See* Doc. # 1 at ¶ 15).   After receiving no response to its first e-mail, on or about March 27, 2013 CrossFit sent

15

another e-mail to Jenkins, again demanding him to cease and desist his use of the CrossFit

Marks and the crossfitnutrition.com domain and to transfer the domain to CrossFit.   (*See* Doc.

# 1 at ¶ 16).   On March 27, 2013, Jenkins responded, refusing to cease and desist his

infringing use of CrossFit's marks and transfer the crossfitnutrition.com domain.   (*See id.*).   On

or about March 28, 2013 and April 3, 2013, CrossFit sent additional cease and desist e-mails to

Jenkins, who failed to further respond or otherwise comply with CrossFit's demands.   (*See*

Doc. # 1 at ¶ 17).   After being notified of CrossFit's rights and registrations in the marks,

Jenkins has willfully disregarded cease and desist notices from CrossFit and refused to stop

using the infringing domain name or to transfer the domain.   *See Louis Vuitton Malletier and*

*Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 585 (E.D. Pa. 2002) ("Willfulness can be inferred by

the fact that a defendant continued infringing behavior after being given notice.") (citations

omitted).

Bad faith is established because, *inter alia*, despite the fact that CrossFit has specifically

informed Jenkins that his domain name is likely to create consumer confusion and constitutes

unauthorized use of the CrossFit Marks, he continues to use the domain name with the intent of

diverting consumers from CrossFit's website and from the websites of licensed CrossFit

affiliates in an attempt to profit from consumer deception and misappropriation of CrossFit's

goodwill.   (*See* Doc. # 1 at ¶ 53).   Jenkins does not have reasonable grounds or the actual

belief that the use of the domain name was a fair use or otherwise lawful.   (*See* Doc. # 1 at ¶

54).   The well-pleaded allegations support a finding that Jenkins registered the domain with

bad faith intent to profit from the CrossFit Marks.

E.     Award of Damages

Upon a finding of liability for cyberpiracy pursuant to 15 U.S.C. § 1125(d)(1), "the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just."   15 U.S.C. § 1117(d).   "[W]hen a plaintiff seeks statutory damages, the court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima."   *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1108 (S.D. Cal. 2012) (internal quotation marks and citation omitted).   To determine a reasonable amount of statutory damages, "courts generally consider a number of factors . . ., including the egregiousness or willfulness of the defendant's cybersquatting, the defendant's use of false contact information to conceal its infringing activities, the defendant's status as a serial cybersquatter . . . and other behavior by the defendant evidencing an attitude of contempt towards the court of the proceedings."   *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1086 (C.D. Cal. 2012) (internal quotation marks and citation omitted).

The purpose behind the ACPA's statutory damages provision is not merely to compensate a plaintiff for its injury, but also to discourage wrongful conduct by the defendant. *See St. Luke's Cataract and Laser Institute, P.A. v. Sanderson*, 573 F.3d 1186, 1206 (11th Cir. 2009) ("other circuits have interpreted the ACPA's statutory damages provision to contain a deterrence element similar to copyright law") (citing *E. & J. Gallo Winery v. Spider Webs Ltd.*, 286 F.3d 270, 278 (5th Cir. 2002) (noting that the copyright statutory damages provision "is designed to discourage wrongful conduct" and affirming statutory damages award of $25,000 under the ACPA, even though plaintiff did not suffer any actual injury.) (citation omitted).   *See*

*also Migliore & Associates, LLC v. Kentuckiana Reporters, LLC*, No 3:13-CV-315-H, 2013 WL 5323035, at * 2 (W.D. Ky. Sept. 20, 2013) (to the extent defendant "faults the complaint for being silent as to how [defendant's] alleged use of the domain name caused any actual harm, the Court points out that no actual damages need be alleged to recover under the ACPA."); *City of Carlsbad v. Shah*, 850 F. Supp. 2d at 1108 (policy behind § 1117 damages is to "take all economic incentive out of trademark infringement.") (internal quotation marks and citation omitted).

1.      Court May Consider Extrinsic Evidence of Damages

The court held a hearing on CrossFit's Motion on March 5, 2014.   In advance of the hearing, CrossFit submitted documentary evidence to the court.   (See Docs. ## 20 through 20-5, 21 through 21-9).   "To award damages [under Rule 55(b)(2) ], it is not necessary for a court to hold a hearing; instead a court may rely upon affidavits and documentary evidence." *Overcash v. United Abstract Group, Inc.*, 549 F.Supp.2d 193, 196 (N.D.N.Y.2008).   *See also Advanced Optics Elecs., Inc. v. Robins*, 769 F. Supp. 2d 1285, 1303-1304 (D.N.M. 2010) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.") (internal quotation marks and citations omitted);   *Seme v. E & H Prof'l Sec. Co.*, No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at * 11 (D. Colo. Mar. 19, 2010) ("In ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment.") (citation omitted).   Here, the court accepts the undisputed facts set forth in the Declarations and exhibits.   (*See* Docs. # 20 through #20-5, # 21 through # 21-9).

2. Maximum Statutory Damages

The court finds that CrossFit's request for an award of damages in the amount of $100,000 is warranted. "[T]he defendant's intent and behavior are the foremost consideration." *Original Appalachian Artworks, Inc. v. J.F. Reichert, Inc.*, 658 F. Supp. 458, 465 (E.D.Pa.1987). *See also Louis Vuitton Malletier and Oakley,* 211 F. Supp. 2d at 585 (awarding the statutory maximum damages of $100,000 based upon nature of defendant's conduct, including defendant's bad faith). Jenkins has exhibited a bad faith intent in the use of the CrossFit Marks. The crossfinutrition.com domain name incorporates the entirety of the "CrossFit" name. (*See* Doc. # 21-4). Jenkins used the crossfitnutrition.com website to obtain commissions as part of an affiliate marketing program, under which he could receive payment for a portion of the sales generated from the products listed on the website. (*See* Docs. # 21-5, # 21-6, # 21-7). Jenkins's intent to divert customers from CrossFit for commercial gain is evidenced by the likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the crossfitnutrition.com website.

Jenkins twice offered to sell the domain name back to CrossFit and threatened to auction the domain for a starting bid of $25,000. (*See* Docs. # 20-4, # 20-5). In or around August 2010, CrossFit became aware that Jenkins was offering the www.crossfitnutrition.com domain for sale. (*See* Doc. # 20-4). On August 20, 2010, Jenkins sent an e-mail to CrossFit, stating his intent to "auction" the domain at an opening bid of $25,000. (*See id.*). Jenkins expressly invited CrossFit to purchase the domain. (*See id.*) On the same day, CrossFit responded and informed Jenkins of CrossFit's registration and ownership of the CrossFit marks. (*See id.*). CrossFit demanded that Jenkins immediately transfer the domain to CrossFit in exchange for CrossFit's promise not to file suit for trademark infringement and other claims. (*See id.*).

Jenkins refused to transfer the domain, again stating that the domain name would go to auction if CrossFit did not make a reasonable purchase offer.   (*See id.*)   Jenkins threatened to claim damages of $100,000 against CrossFit should it pursue any cease and desist order against him.  (*See id.*).

On March 26, 2013, CrossFit again contacted Jenkins, reminding him of its rights in the CrossFit marks and demanding that he transfer the domain to CrossFit.   (*See* Doc. # 20-5). Having received no response, CrossFit contacted Jenkins again on March 27, 2013. (*See id.*). Jenkins responded and continued to refuse to transfer the domain without monetary payment. (*See id.*).   CrossFit rejected his invitation and reasserted its demand for the domain transfer. (*See id.*).   Jenkins did not further respond.   (*See id.*).   "The quintessential example of a bad faith intent to profit is when a defendant purchases a domain name very similar to the trademark and then offers to sell the name to the trademark owner at an extortionate price." *Utah Lighthouse Ministry*, 527 F.3d at 1058.   *See also TCPIP Holding co. v. Haar Communications Inc.*, No. 99 Civ. 1825(RCC), 2004 WL 1620950, at *5 (S.D.N.Y. July 19, 2004) (finding bad faith intent to profit where a defendant "submitted no less than three offers to sell back various packages of domain names (the vast majority of which [he] acquired after he received Plaintiff's cease and desist letter)").   CrossFit has repeatedly informed Jenkins that his acts constitute infringement.   The undisputed allegations and evidence of Jenkins's continued knowing and willful conduct constitutes grounds for CrossFit's recovery of the maximum allowable statutory damages in the amount of $100.000.00 under 15 U.S.C. § 1117(d), in lieu of actual damages and profits.   (*See* Doc. # 1 at ¶ 55).   *See Mirage Resorts, Inc. v. Cybercom Productions*, 228 F. Supp. 2d 1141, 1142 (D. Nev. 2002) (awarding statutory damages of $100,000 by default judgment).

F.     Attorney Fees

The ACPA provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).   An award is within the discretion of the trial court and will not be disturbed absent abuse of that discretion.   *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir. 1993) (citation omitted).   "The Lanham Act does not define what is an 'exceptional' case, but we have determined it occurs when a trademark infringement is malicious, fraudulent, deliberate, or willful."   *United Phosphorous, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1232 (10th Cir. 2000) (citations omitted).   *See also Gucci America, Inc. v. Rebecca Gold Enterprises, Inc.*, 802 F. Supp. 1048, 1050 (S.D.N.Y. 1992) ("Courts construing 'exceptional' have interpreted it to refer to cases involving deliberate or willful infringement.") (citations omitted).

The well-pleaded allegations and evidence before the court support a finding that Defendant Jenkins acted deliberately, willfully, and in bad faith by using the domain name crossfitnutrition.com in an effort to confuse consumers and to divert Internet traffic to his web site for his own economic gain, attempting to sell the domain name back to CrossFit, and threatening to auction the domain.   Jenkins's failure to appear in this action further demonstrates the exceptional nature of this case and the propriety of awarding attorney's fees to CrossFit.   *See Taylor Made Golf Co. v. Carsten Sports, Ltd.*, 175 F.R.D. 658, 663 (S.D. Cal. 1997) ("[A] case may be considered 'exceptional' where the defendant disregards the proceedings and does not appear.") (citing *Lien v. Compusoft of Kalamazoo, Inc.*, No. 1:89CV-104, 1991 WL 641575, at *5 (W.D.Mich. 1991) ("given defendant's total disregard of these proceedings and the underlying claims of trademark infringement at issue, this case is exceptional")).   The billing compilations submitted by CrossFit sufficiently demonstrate that

21

through December of 2013, CrossFit incurred $18,996.00 in reasonable attorney fees for prosecution of the Complaint.   (*See* Declaration of You-Fong C. Amato at ¶ 13;   Exhibit 9 to Declaration of You-Fong C. Amato (Doc. # 21-9)).   As Defendant Jenkins's acts have been knowing, intentional, wanton, and willful, CrossFit is entitled to attorney fees pursuant to 15 U.S.C. § 1117.

G.    Costs

CrossFit also seeks reimbursement of its costs incurred in this action, under both Fed. R. Civ. P. 54(d)(1) and the Lanham Act, 15 U.S.C. § 1117(a).   Rule 54(d)(1) provides that costs should be allowed to a prevailing party.   Costs may be taxed under Rule 54(d) where they are authorized by a federal statute.   *Faraca v. Fleet 1 Logistics, LLC*, 693 F. Supp. 2d 891, 896 (E.D. Wis. 2010).   Section 1117(a) provides that costs may be recovered for established violations of the ACPA , 15 U.S.C. § 1125(d).   "In addition to being authorized by statute, a cost must be both reasonable and necessary to the litigation for a prevailing party to recover it."   *Id.*

CrossFit is the prevailing party in this action by virtue of Jenkins's default.   *See, e.g., J & J Sports Productions, Inc. v Paz-Padilla*, No. 3:12-cv-02228-GPC-WMC, 2013 WL 6002872, at * 1 (S.D. Cal. Nov. 12, 2013) ("a plaintiff who obtains a default judgment may be considered a prevailing party for purposes of awarding fees and costs . . .") (citation omitted);   *Local 881 United Food and Commercial Workers Union v. Food Club of Indiana d/b/a Valumart Foods*, No. 2:11–CV–161–TLS, 2011 WL 3501721, at ** 2-3 (Aug. 10, 2011) (awarding costs under Rule 54(d)(1) on default judgment);   *St. Paul Fire & Marine Ins. Co. v. AVH Trucking LLC*, No. 07-4802, 2008 WL 4601771, at * 5 (D.N.J. Oct. 15, 2008) (same).   CrossFit has established its ACPA claim, statutory damages, and attorney fees by the well-pleaded allegations and

22

evidence.   It has incurred $3,784.09 in compensable litigation costs, which consist of filing fees and service fees, including the hiring of a private investigator to locate and serve Jenkins.   (*See* Doc. # 20 at ¶ 14).   Pursuant to 15 U.S.C. § 1117 and Fed. R. Civ. P. 54(d), CrossFit is also entitled to its costs.

H.     Transfer of the Domain

CrossFit also seeks an order forfeiting, cancelling, or transferring the domain name "www.crossfitnutrition.com" to CrossFit pursuant to 15 U.S.C. § 1125 (d)(1)(C).   The Lanham Act authorizes the court to "order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark."   15 U.S.C. § 1125(d)(1)(C).   *See Eurotech, Inc. v. Cosmos European Travels AG*, 213 F. Supp. 2d 612, 627 (E.D. Va. 2002) (ordering transfer of the infringing domain name to the trademark owner);   *Aztar Corp. v. MGM Casino*, No. 00-833-A, 2001 WL 939070, at *2 (E.D. Va. April 9, 2001) (ordering transfer of the infringing domain name to trademark owner by default judgment).   As Jenkins is in default, the allegations in the Complaint must be taken as true, and CrossFit has established its ACPA claim, it is appropriate for the court to issue an order transferring the crossfitnutrition.com domain name to CrossFit.

I.     Permanent Injunction

Under the Lanham Act, the court has the authority to grant injunctive and other equitable relief to prevent further violations of a plaintiff's trademark rights.   15 U.S.C. § 1116.   *See also John Allan Co. v. Craig Allen Co. L.L.C.*, 540 F.3d 1133, 1142 (10th Cir. 2008) (a court "has the power to grant injunctions, according to the principles of equity and upon such terms as the

court may deem reasonable, to prevent . . . a violation [of the Act]").  "[D]istrict courts should apply traditional equitable principles in deciding whether to grant permanent injunctive relief, and the decision is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion."  *Chanel Inc. v. Yang*, No. C 12-4428 PJH, 2013 WL 5755217, at * 11 (N.D. Cal. Oct. 21, 2013) (internal quotation marks and citations omitted).  "In determining whether to issue a . . . permanent injunction, a court must consider whether the movant has established: (1) success on the merits; (2) irreparable injury if the injunction does not issue; (3) the threatened injury to it outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction will not be adverse to the public interest."  *Morrison & Foerster, LLP v. Wick*, 94 F. Supp. 2d at 1129 (citations omitted).  *See also K-TEC v. Vita-Mix*, 765 F. Supp. 2d 1304, 1317 (D. Utah 2011) ("The court should grant injunctive relief if a plaintiff shows that (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, the balance favors the plaintiff and an equitable remedy is warranted; and (4) the public interest would not be disserved by a permanent injunction.") (citation omitted).

Here, all of the elements for injunctive relief are satisfied and traditional equitable principles weigh in favor of an injunction.  CrossFit has established a likelihood of confusion based on Jenkins's use of the CrossFit name and the overlap of nutritional products and services offered on his website.  In cybersquatting cases, "[w]here a plaintiff can show probable success in proving a likelihood of consumer confusion, irreparable harm is properly presumed."  *Ballistic Products, Inc. v. Precision Reloading, Inc.*, No. Civ. 03-2950 ADM/AJB, 2003 WL 21754816, at * 5 (D. Minn. July 28, 2003) (internal quotation marks and citation omitted).  *See*

*also Vogster Entm't, LLC v. Mostovoy*, No. 09 Civ. 1036, 2009 WL 691215, at *6 (E.D.N.Y. Mar. 16, 2009) (in a cybersquatting case, "irreparable harm may be presumed where there is a likelihood of success on the merits.") (citation omitted).

Monetary damages are inadequate to force Jenkins to cease his infringing conduct, as demonstrated by his disregard of CrossFit's cease and desist demands and this lawsuit, his threats to sell or auction the domain name, and his continued use of the CrossFit Marks.   The allegations and evidence establish that Jenkins has acted knowingly and willfully.   (*See, e.g.,* Doc. # 1 at ¶¶ 55, 59, Doc. # 20-4, Doc. # 20-5).   Jenkins's past actions indicate that he will continue to violate CrossFit's trademarks.   Jenkins's conduct, if not enjoined, will cause irreparable harm to the goodwill and reputation that CrossFit has cultivated for its marks.   (*See* Doc. # 1 at ¶ 58).   CrossFit has adequately established that Jenkins's actions have caused and will continue to cause irreparable harm to it.

As to the balance of harms, Jenkins has failed to appear, answer or defend and is thus deemed to have conceded the factual allegations in the Complaint.   Jenkins has not provided any evidence of hardship in the event an injunction is granted.   The irreparable harm that has been and will continue to be suffered by CrossFit outweighs any potential harm that Jenkins may suffer from an injunction.

Finally, "protecting the rights of the owner of a registered trademark is consistent with the public interest . . . ."   *Icon Health & Fitness, Inc. v. Medical Productions*, No. 10-cv-00207-DN, 2012 WL 3962737, at *6 (D. Utah Sept. 11, 2012) (citation omitted).   An injunction that "merely protects [the plaintiff's] trademark . . .is directly aligned with public policy interests . . ."   *Id.* "[T]he public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality."   *New York City*

*Triathlon, LLC v. NYC Triathlon*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010) (citations omitted). "A trademark infringement involving an Internet domain name would constitute a misuse of the Internet" and "[t]here is a strong public interest in stopping" misuse of the Internet. *Ballistic Products*, 2003 WL 21754816, at * 7 (citation omitted). *See also Faegre & Benson, LLP v. Purdy*, No. Civ. 03-6472(MJD/JGL), 2004 WL 167570, at * 3 (D. Minn. Jan 5, 2004) ("It is in the public interest to protect Faegre's marks and trade dress because Defendants' infringing domain names and use of Faegre's marks and trade dress are likely to confuse the public as to both the source and sponsorship of Defendants' web page, to divert Internet users from their intended online destinations, and to tarnish Faegre's good name and goodwill.").

Accordingly, IT IS RECOMMENDED that:

1.      Plaintiff's ". . . Motion for Entry of Default Judgment and Permanent Injunction." (filed January 14, 2014) (Doc. # 18) be GRANTED.

2.      Pursuant to Fed. R. Civ. P. 55(b)(2), default judgment be entered in favor of Plaintiff CrossFit, Inc. and against Defendant Jenkins on Count IV of the Complaint for violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), in the total amount of $122,780.09, including $100,000 in statutory damages, $18,996.00 in attorney's fees, and $3,784.09 in costs pursuant to the Lanham Act, 15 U.S.C. § 1117(a) and (d), plus post judgment interest at the rate of .12%.

3.      The domain name registrar, GoDaddy.com, be ordered to transfer the domain name "crossfitnutrition.com" to CrossFit, Inc. within 10 days after service of a copy of the court's order.

4.      A permanent injunction be entered against Defendant Jenkins, restraining and

enjoining him, his officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with him, from making any present or future use whatsoever of the Internet domain name crossfitnutrition.com, the CrossFit marks, or any derivation thereof.

5.     The Doe Defendants be dismissed from this action.

**Advisement to the Parties**

Within **fourteen days** after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);   *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.   "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."   *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).   Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.   *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order,

cross-claimant had waived its right to appeal those portions of the ruling);   *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).   *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 3rd day of September, 2014.

BY THE COURT:


    s/Craig B. Shaffer
United States Magistrate Judge